UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREGORY CRISAFULLI, <br><br> Plaintiff, <br> v. <br><br> AMERITAS LIFE INSURANCE COMPANY, et al., <br><br> Defendants. | Civil Action No.: 13-5937 <br><br> **OPINION & ORDER** |

**CECCHI, District Judge.**

I.  **INTRODUCTION**

This matter comes before the Court by way of two separate motions to dismiss Gregory Crisafulli's ("Plaintiff") Amended Complaint: (1) Defendants Amertias Life Insurance Corp. ("Ameritas") and Cleo Pennington's ("Pennington") motion to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6) (the "Ameritas motion") [ECF No. 34], and (2) Defendant Matthew Dworetsky's ("Dworetsky") motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6) (the "Dworetsky motion") [ECF No. 35]. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth below, Plaintiff's Amended Complaint is dismissed without prejudice.

II.  **BACKGROUND**

Plaintiff, appearing *pro se* in this matter, instituted this action on October 4, 2013. The Court previously dismissed Plaintiff's Complaint without prejudice for lack of subject matter jurisdiction. [ECF No. 25.] Plaintiff filed an Amended Complaint on August 11, 2014 in which he asserts different grounds for the Court's jurisdiction. [ECF No. 30.] Ameritas and Pennington filed a motion to dismiss the Amended Complaint on September 4, 2014 [ECF

No. 34] and Dworetsy filed a motion to dismiss the Amended Complaint on September 8, 2014 [ECF No. 35].

In his Amended Complaint, Plaintiff alleges that Ameritas, Pennington, and Dworetsky (together, "Defendants") violated multiple sections of the Fair Credit Reporting Act ("FCRA"). (Am. Compl. at 9-11.) Plaintiff initially maintained a life insurance policy through Primerica Life Insurance Company ("Primerica"), but used the services of Dworetsky to apply for a life insurance policy from Ameritas. (Id. at 7.) With respect to Dworetsky's services, Plaintiff alleges that "[a]ll applications were signed in advance and filled in after the signing", and he therefore "fear[s]" that he "was misrepresented by Mr. Dworetsky at the time of the signing." (Id.) Plaintiff also contends that "[t]he applications were completed without [his] presence." (Id.)

On October 13, 2011, Ameritas sent a letter (the "Letter")—signed by Pennington—to Primerica for the purposes of notifying Primerica that Plaintiff applied for a new insurance policy with Ameritas. (Id. at 16.)[1] The Letter explained that Plaintiff's existing insurance with Primerica may be discontinued in the event the Ameritas policy is issued. (Id.) Plaintiff also received a copy of the letter, but claims that it arrived unsealed. (Id. at 8.) All damages alleged by Plaintiff seem to stem from his assertion that the Letter "improperly cit[ed] [his] name with [his] full social security number, date of birth, and address." (Id. at 5.) Plaintiff contends that

---

[1] The Court may rely on "a document *integral to or explicitly relied* upon in the complaint . . . without converting the motion to dismiss into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citation and edits omitted); Pryor v. Nat'l Collegiate Athletic Ass'n., 288 F.3d 548, 560 (3d Cir. 2002). Here, the Letter was attached to the Amended Complaint and forms the basis of Plaintiff's claims. Accordingly, the Court may consider the attached letter.

"[t]he October 13, 2011 letter used [his] complete social security number as [his] policy number which can easily be seen through the envelope window." (Id. at 8.) Characterizing the Letter as a "release of [his] personal identification" information, Plaintiff claims that he incurred damages "in the form of expenses for the protection of identity theft, emotional distress including anxiety, fear of being victimized, harassment and embarrassment." (Id. at 7.) The Amended Complaint includes a section entitled, "Factual Allegations in support of Identity Theft", but pleads nothing more than the facts already recounted.

### III.  LEGAL STANDARD

#### A.  Standing Under Article III[2]

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" Lance v. Coffman, 549 U.S. 437, 439 (2007); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) ("Though some of its elements express merely prudential considerations that are part of judicial self-government, the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). One key aspect of this case-or-controversy requirement is standing. Lance, 549 U.S. at 439. "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." Constitution Party of Pennsylvania, 757 F.3d at 360 (citing Davis v. FEC, 554 U.S. 724, 734 (2008)). To establish standing, a plaintiff must satisfy a three-part test, showing: (1) an 'injury in fact,' i.e., an actual or imminently threatened injury that is

---

[2] Here, the Court raises standing *sua sponte*. Because standing is a constitutional prerequisite for federal court jurisdiction, the issue of standing may be raised by the Court in this manner. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231, 110 S. Ct. 596, 607, 107 L. Ed. 2d 603 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines." (citation omitted)); Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 360 n. 9 (3d Cir. 2013); Lewis v. Alexander, 685 F.3d 325, 338 n. 10 (3d Cir. 2012); Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 405 (3d Cir. 2005); Eastampton Ctr., L.L.C. v. Twp. of Eastampton, 155 F. Supp. 2d 102, 112 (D.N.J. 2001).

'concrete and particularized' to the plaintiff; (2) causation, i.e., traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court. Nat'l Collegiate Athletic Ass'n v. Gov. of N.J., 730 F.3d 208, 218 (3d. Cir. 2013) (citing Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)). "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561. At the motion to dismiss stage, a plaintiff must demonstrate a plausible claim of standing. See id. ("each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.")

All three elements of standing are constitutionally mandated, but the injury-in-fact requirement is often determinative. Toll Bros. v. Twp. of Readington, 555 F.3d 131, 138 (3d Cir. 2009). While a plaintiff may adequately allege a future injury sufficient to confer standing, the future injury must be "imminent". This concept of imminence is "elastic", but "it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138 (2013). Accordingly, the Supreme Court has reiterated that "threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." Id. (edits and citations omitted).

A plaintiff must not only allege a cognizable injury-in-fact, but also "a causal connection between the injury and the conduct complained of". Lujan, 504 U.S. at 560. While "[c]ausation in the context of standing is not the same as proximate causation from tort law", Constitution Party of Pennsylvania, 757 F.3d at 366, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not

before the court." Lujan, 504 U.S. at 560 (internal edits omitted). "If the injury-in-fact prong focuses on *whether* the plaintiff suffered harm, then the traceability prong focuses on *who* inflicted that harm." Toll Bros., 555 F.3d at 142.

The final element of standing, redressability, "is 'closely related' to traceability, and the two prongs often overlap." Id. "The difference is that while traceability looks backward (did the defendants cause the harm?), redressability looks forward (will a favorable decision alleviate the harm?)." Id. That said, "[r]edressability is not a demand for mathematical certainty"—"[i]t is sufficient for the plaintiff to establish a substantial likelihood that the requested relief will remedy the alleged injury in fact." Id. at 143 (internal quotation omitted).

### B.    12(b)(6) Standard

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, U.S. at 678.

### IV.   DISCUSSION

The Court's subject matter jurisdiction in this case is based on the federal question

presented by Plaintiff's claims under FCRA. (Am. Compl. at 9-11.) Accordingly, as a threshold matter, the Court must examine whether Plaintiff has standing under Article III to assert his FCRA claims. The Court will then proceed to the merits of Plaintiff's FCRA claims.

### A.     Standing

Here, Plaintiff has not alleged that his personal information was accessed or misused, that there have been any unauthorized withdrawals from his accounts, that his credit has been impaired, or that his identity has been stolen. Instead, Plaintiff simple states that that he sustained damages "in the form of expenses for the protection of identity theft, emotional distress including anxiety, fear of being victimized, harassment and embarrassment." (Id. at 7.) The Court will examine each of these theories in turn.

#### 1.     Expenses for the Protection of Identity Theft

With respect to "expenses for the protection of identity theft", the fact that "a plaintiff has willingly incurred costs to protect against an alleged increased risk of identity theft is not enough to demonstrate a 'concrete and particularized' or 'actual or imminent' injury" sufficient for standing. Reilly v. Ceridian Corp., 664 F.3d 38, 46 (3d Cir. 2011). While the Supreme Court and the Third Circuit have suggested that a plaintiff may rely on preventative expenses for standing purposes where there is a plausible, increased risk of future harm, Plaintiff cannot demonstrate such a plausible risk. See Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1143 (2013) ("[plaintiffs] cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending."); Reilly, 664 F.3d at 46 ("[Plaintiffs'] alleged time and money expenditures to monitor their financial information do not establish standing, because costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of

injury' which forms the basis for [plaintiffs'] claims.").

In Reilly, an unknown hacker infiltrated the computer system of a payroll processing firm, potentially gaining access to the names, addresses, social security numbers, dates of birth, and bank account information of approximately 27,000 employees. Id. The court held that "an increased risk of identity theft resulting from a security breach [is] [] insufficient to secure standing." Id. at 43. In so holding, the court recognized that the plaintiffs' contentions relied "on speculation that the hacker: (1) read, copied, and understood their personal information; (2) intends to commit future criminal acts by misusing the information; and (3) is able to use such information to the detriment of [plaintiffs] by making unauthorized transactions in [plaintiffs'] names." Id. at 42. Plaintiffs' "allegations of hypothetical, future injury are insufficient to establish standing" because plaintiffs had "not suffered any injury" and would not sustain an injury "[u]nless and until these conjectures come true". Id. Simply put, "there [was] no misuse of the information, and thus, no harm". Id. Plaintiff's claims suffer from the same fatal defects: he has alleged no misuse of information and any future identity theft relies on the same speculative chain of events identified in Reilly. Thus, because Plaintiff has not alleged a plausible claim of future identity theft, he may not rely on expenses for identity theft protection as a basis for standing.

### 2. Emotional Distress

With respect to Plaintiff's claim of "emotional distress", the Third Circuit has rejected such a claim in a strikingly similar context. In Reilly, discussed above, the court explained that "any harm that may occur—if all of [plaintiffs'] stated fears are actually realized—may be redressed in due time through money damages after the harm occurs". Id. at 45. Indeed, the Reilly court explained, "there is no reason to believe that monetary compensation will not return

7

plaintiffs to their original position completely—*if* the hacked information is actually read, copied, understood, and misused to a plaintiff's detriment." Id. Courts across the country have rejected "emotional distress" as a basis for standing under similar circumstances. See, e.g., In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig., 2014 WL 1858458, at *9 (D.D.C. May 9, 2014); In re Barnes & Noble Pin Pad Litig., 2013 WL 4759588, at *5 (N.D. Ill. Sept. 3, 2013).

The Court must note, however, that FCRA provides for compensation in the form of "actual damages" if a consumer reporting agency negligently fails to comply with any provision of FCRA, 15 U.S.C. § 1681o, and the term "actual damages" has been interpreted to include recovery for emotional distress. See Taylor v. Tenant Tracker, Inc., 710 F.3d 824, 828 (8th Cir. 2013); Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 239 (4th Cir. 2009); Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995). However, mere conclusory statements of "emotional distress" will not support a FCRA claim. See Taylor, 710 F.3d at 828 ("emotional distress damages [under FCRA] must be supported by competent evidence of genuine injury, which may be evidenced by one's conduct and observed by others." (citation omitted)); Cousin v. Trans Union Corp., 246 F.3d 359, 371 (5th Cir. 2001) (explaining that a FCRA plaintiff seeking emotional distress damages is required to present "evidence of genuine injury, such as the evidence of the injured party's conduct and the observations of others"); Myers v. Bennett Law Offices, 238 F. Supp. 2d 1196, 1206 (D. Nev. 2002) ("a plaintiff must support a claim for damages based on emotional distress with something more than his or her own conclusory allegations."). Here, Plaintiff's bald assertion of "emotional distress including anxiety, fear of being victimized, harassment and embarrassment" is unexplained by any facts at all, let alone facts plausibly suggesting emotional injury. Such "[t]hreadbare recitals" and "mere

conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Accordingly, the Court finds that Plaintiff lacks standing to challenge the actions of Defendants.

**B.    FCRA Claims**

Even if Plaintiff had standing to assert his claims under FCRA, those claims would fail for the reasons stated below.[3]

**1.    Claims against Ameritas and Pennington[4]**

Plaintiff relies on 15 U.S.C. § 1681s-2(a) and 15 U.S.C. § 1681s-2(b) of FCRA for his claims against Ameritas and Pennington. However, it is well established that the former does not support a private cause of action. Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 34 (3d Cir. 2011) (citing Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059 (9th Cir. 2002)); see also Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1162 (9th Cir. 2009); Ausar-El v. Barclay Bank Delaware, 2012 WL 3137151, at *2 (D. Md. July 31, 2012); Brown v. Bank of New York Mellon, 2011 WL 6016901, at *6 (W.D. Mich. Dec. 2, 2011); Paredes v. Sallie Mae, 2011 WL 5599605, at *4 (D.N.J. Nov. 16, 2011); Martinez v. Granite State Mgmt. & Res., 2008 WL 5046792, at *2 (D.N.J. Nov. 20, 2008). Indeed, FCRA makes clear that federal and state authorities have exclusive enforcement powers under § 1681s-2(a). See 15 U.S.C. § 1681s-2(c)-

---

[3] To the extent Plaintiff asserts any claims under California's identity theft law, those claims are inapplicable for the reasons stated by Ameritas. (See Ameritas Mot. at 11 n. 2.)

[4] Although Plaintiff named Pennington as a defendant, Plaintiff asserts no claims against Pennington individually but, instead, asserts the same claims against Pennington and Ameritas. (See Am. Compl. at 9.) Because Plaintiff sues Pennington solely in his capacity as an employee for Ameritas, the Court need not separately analyze any claims against him. Veltmann v. Walpole Pharmacy, Inc., 928 F. Supp. 1161, 1164 (M.D. Fla. 1996) ("Plaintiffs' Complaint makes general allegations against all of the named defendants. The complaint fails to separate each alleged act by each defendant into individually numbered paragraphs. . . . This particular defect in pleading would be enough to grant a motion to dismiss with leave to amend".) In any event, any claims asserted against Pennington individually must be dismissed because, like Dworetsky, he is not a consumer reporting agency or a furnisher of information, see infra.

(d); see also Longman v. Wachovia Bank, N.A., 702 F.3d 148, 151 (2d Cir. 2012) ("Although we have not previously addressed whether the Fair Credit Reporting Act provides a private cause of action for violations of § 1681s–2(a), the statute plainly restricts enforcement of that provision to federal and state authorities."); Washington v. CSC Credit Servs. Inc., 199 F.3d 263, 269 n. 5 (5th Cir. 2000).

Plaintiff's § 1681s-2(b) claim also lacks merit. This section of FCRA requires that furnishers of information take certain steps to investigate and correct inaccurate information they have already relayed to the credit rating agencies. Burrell v. DFS Servs., LLC, 753 F. Supp. 2d 438, 447 (D.N.J. 2010). However, as Judge Debevoise of this Court explained:

> a furnisher of credit information is required to investigate and correct inaccurate charges only "[a]fter receiving notice pursuant to [15 U.S.C. §] 1681i(a)(2) . . . of a dispute" regarding those charges. 15 U.S.C. § 1681s–2(b)(1). Section 1681 i(a)(2) requires credit rating agencies—not the consumers themselves—to provide such notice to furnishers within five business days from the time the consumer notifies the credit rating agency of a dispute. Thus, a consumer cannot maintain a claim under subsection (b) of 15 U.S.C. § 1681s–2 based on disputes filed directly with his or her credit card company. Rather, the consumer must communicate such disputes to a credit rating agency, which is then obligated to pass them on to the credit card company.

Id. at 448. Thus, "§ 1681s–2(b) is triggered only after a consumer notifies the *consumer credit agency* of a dispute." Edwards v. Equable Ascent, FNCL, LLC, 2012 WL 1340123, at *5 (D.N.J. Apr. 16, 2012) (emphasis added). In light of the procedures outlined by FCRA, the Court has recognized that, in order to state a claim under § 1681s-2(b), a plaintiff must allege: (1) she sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." Id. (citing Ruff v. America's Servicing Co., 2008 WL 1830182, at *4 (W.D.Pa. Apr. 23, 2008)).

Defendant argues, and Plaintiff does not contest, that Plaintiff never sent notice of disputed information to a consumer reporting agency. (Ameritas Mot. at 10-12.) Accordingly, Plaintiff's § 1681s-2(b) claim must fail. See Id. (dismissing plaintiff's § 1681s-2(b) claim because his complaint failed to allege that he notified a consumer agency of disputed information); Burrell, 753 F. Supp. 2d at 447 (noting that plaintiff could not assert a § 1681s-2(b) claim for Defendants' furnishing of inaccurate information prior to the date on which he first informed the *credit reporting agencies* that his identity was stolen).

For these reasons, Plaintiff's FCRA claims against Ameritas and Pennington must be dismissed.

### 2. Claim against Dworetsky

Plaintiff also asserts a FCRA claim against Dworetsky under 15 U.S.C. § 1681a because he allegedly "created the application forms" for the Ameritas insurance policy and then "forward[ed] these papers without a separate form which must be signed in order to give authority to Ameritas". (Am. Compl. at 10.) This claim must be dismissed for two reasons.

First, § 1681a codifies "definitions" and "rules of construction" for FCRA, but does nothing to create a private right of action. Plaintiff cites no cases, and the Court is aware of none, in which a court held that § 1681a allows such a claim. Indeed, unlike other sections of FCRA, there is no mention of civil liability for violations of § 1681a nor any other indication that § 1681a was meant to create a cause of action.

Second, Dworetsky is not a proper party under FCRA. The purpose of FCRA was to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and

proper utilization of such information". 15 U.S.C. § 1681(b). As this Court has noted, FCRA imposes duties on two types of entities: consumer reporting agencies and "furnishers of information." Burrell, 753 F. Supp. 2d at 446. "Consumer reporting agency" is defined by FCRA as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a. "Although undefined by the statute, ['furnishers of information'] is understood to include any entity that reports information relevant to a consumer's credit rating—i.e., payment history, amount of debt, and credit limit—to credit reporting agencies. Burrell, 753 F. Supp. 2d at 446.

Dworetsky argues that he is merely a "licensed insurance producer" and not a "consumer reporting agency" or "furnisher of information" within the meaning of FCRA. (Dworetsky Mot. at 9.) Dworetsky also notes: "Plaintiff does not allege that Mr. Dworetsky furnished any information to a credit reporting or credit rating agency. He simply alleges that Mr. Dworetsky furnished information (provided by Mr. Crisafulli, with his authorization) to Ameritas." (Id.) The Court agrees. Plaintiff has adduced no facts that could plausibly subject Dworetsky to liability under FCRA: Plaintiff does not maintain that Dworetsky engages in the practice of assembling or evaluating consumer credit information for the purpose of furnishing consumer reports to third parties, and there is nothing in the Amended Complaint to suggest that Dworestsky reports information relevant to a consumer's credit rating to a consumer reporting

agency. Therefore, Plaintiff's FCRA claim against Dworetsky must be dismissed.[5]

## V.  CONCLUSION

For the reasons set forth above, **IT IS** on this 29 day of April 2015,

**ORDERED** that claims against all Defendants are hereby **DISMISSED** for lack of standing; and it is further

**ORDERED** that the Ameritas and Dworetsky motions to dismiss [ECF Nos. 34-35] are **GRANTED** without prejudice;[6] and it is further

**ORDERED** that the Clerk of the Court shall close this matter; and it is further

**ORDERED** that, to the extent the deficiencies in Plaintiff's claims can be cured by way of amendment, Plaintiff is granted thirty (30) days to reinstate this matter upon the filing of a Second Amended Complaint.

_____
**CLAIRE C. CECCHI, U.S.D.J.**

---

[5] Dworetsky also argues that he was not sufficiently served with process. (Dworetsky Mot. at 4-6.) The Court makes no findings regarding this issue because the claims against Dworetsky have been dismissed on other grounds.

[6] To the extent Plaintiff wishes to add Union Central Life Insurance Company as a defendant, (see Am. Compl. at 11), that application is denied. As Ameritas notes, "Union Central has been merged into Ameritas and no longer has a separate corporate existence." (Ameritas Mot. at 7; Cambria Decl. Ex. 1.)

13