NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GREGORY CRISAFULLI, <br><br>                                Plaintiff, <br><br> v. <br><br> AMERITAS LIFE INSURANCE CO., et al., <br><br>                                Defendants. | Civil Action No.: 2:13-cv-05937 <br><br><br> **OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court on two motions to dismiss *pro se* Plaintiff Gregory Crisafulli's ("Plaintiff") Third Amended Complaint (ECF No. 66): (1) Defendants Ameritas Life Insurance Company ("Ameritas") and Cleo Pennington's ("Pennington") motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 70); and (2) Defendant Matthew Dworetsky's ("Dworetsky") motion to dismiss under Rules 12(b)(2), 12(b)(5), and 12(b)(6) (ECF No. 71). This matter is decided without oral argument pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Third Amended Complaint (ECF No. 66 ("3d Am. Compl.")) is dismissed with prejudice.

**I.      BACKGROUND**

   **A.      Factual Background[1]**

The instant action arises out of Plaintiff's application for a life insurance policy from Ameritas. In connection with his application, Plaintiff is concerned about a single letter Ameritas sent to him wherein his name was misspelled, adding an erroneous middle initial "L," and the envelope arrived unsealed. He is worried that his personal information was revealed in the course

---

[1] The following facts are accepted as true for purposes of the instant motions.

of the transmission and that the misspelling of his name also appeared on a credit report, although such spelling error was later rectified. After rounds of repleading, Plaintiff is now alleging theft of his credit cards, loosely linked to fraud alerts that he received in 2012 and 2013.

Plaintiff previously maintained a life insurance policy from Primerica Life Insurance Company ("Primerica"). Id. ¶ 102. In October 2011, Plaintiff hired Dworetsky, an insurance broker, to apply for a new life insurance policy from Ameritas. Id. ¶¶ 81, 102–04. Dworetsky collected information from Plaintiff for the purpose of submitting the Ameritas application. Id. ¶ 104. Plaintiff signed all documents in advance (id. ¶ 102) and the application was filled in after signing (*see* id. ¶ 103). Plaintiff alleges that Dworetsky forwarded the application to Ameritas without a duly executed authorization form for the release of such information. *See* id. ¶¶ 103–04. Plaintiff also alleges that he opted not to provide his Primerica policy number to Dworetsky, which "caused the substitution of [his] social security number" in subsequent applications and letters. Id. ¶ 102.

Thereafter, Plaintiff received a copy of a letter from Pennington, an Ameritas employee, addressed to Primerica, dated October 13, 2011. Id. at 14 (the "Pennington Letter"). The Letter stated that Ameritas received an application for a life insurance policy from Plaintiff, which, if issued, would replace Plaintiff's existing Primerica policy. Id. Plaintiff claims that his social security number was visible through the transparent window on the envelope and that the letter arrived "unsealed." Id. ¶ 87–88. Plaintiff fears the letter "may have been intercepted" or that Ameritas continued to publish and distribute the letter. Id. ¶ 85. Plaintiff appears to allege that, as a result of this transmission, his Chase Credit cards were the subject of theft (id. ¶ 109), although he provides little explanation for the allegation other than citing to two fraud alerts from Chase dated November 14, 2012, and March 26, 2013 (id. at 29, 30). After sending the Pennington Letter,

Ameritas informed Plaintiff by letter on December 7, 2011 that they were closing his application file as he failed to provide information required for the underwriting process. *See* id. at 21. Ameritas did not issue Plaintiff a life insurance policy.

At some point Plaintiff ordered his credit report from non-party TransUnion, a consumer reporting agency ("CRA"). Id. ¶¶ 80, 84. The report, dated November 2, 2011, spelled his name "Gregory L. Crisafulli," using an erroneous middle initial "L." Id. at 16. Plaintiff claims he disputed this misspelling with Ameritas. Id. ¶¶ 84, 97–98. Plaintiff believes that the "inaccuracy in [his] name comes from [his] deceased wife [whose] middle initial was 'L.'" ECF No. 48 ("2d Am. Compl.") ¶ 20. After receiving the report, Plaintiff disputed the spelling of his name with TransUnion. 3d Am. Compl. ¶ 84. By letter dated November 20, 2011, TransUnion informed Plaintiff that it had corrected the disputed information. Id. at 28. Plaintiff contends that Ameritas must provide him with an investigative report, explaining the source of the misspelling and whether third parties received this incorrect spelling. Id. ¶ 98.

### B. Procedural History

On October 4, 2013, Plaintiff, initiated this action against Ameritas, Pennington, and Dworetsky (collectively "Defendants"). ECF No. 1. On June 11, 2014, the Court dismissed Plaintiff's complaint without prejudice for lack of subject matter jurisdiction. ECF No. 25. Thereafter, Plaintiff filed his First Amended Complaint asserting new grounds for jurisdiction. ECF No. 30 ("Am. Compl."). On April 29, 2015, the Court dismissed the First Amended Complaint without prejudice for lack of standing. ECF No. 47.

Plaintiff then filed the Second Amended Complaint, which asserts various claims under the Fair Credit Reporting Act ("FCRA"). ECF No. 48 ("2d Am. Compl."). Defendants moved to dismiss the Second Amended Complaint in June 2015. ECF Nos. 51, 52. On January 28, 2016,

the Court administratively terminated Defendants' motions pending a decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), which could have potentially impacted standing under FCRA. ECF No. 59. Defendants' motions were subsequently reinstated. ECF Nos. 60, 61. On September 27, 2018, the Court dismissed the Second Amended Complaint without prejudice and directed Plaintiff to file an amended complaint to clarify his arguments after his opposition papers (ECF No. 54) seemed to introduce a new legal theory. ECF No. 65.

On October 25, 2018, Plaintiff filed a Third Amended Complaint, which appears to incorporate by reference, and supplement, the Second Amended Complaint.[2] *See* ECF No. 66 ("3d Am. Compl.") at 1. The Third Amended Complaint is difficult to follow, as it does not list the claims against each party, primarily restates allegations from prior pleadings, and contains numerous conclusory statements. *See generally* id. Plaintiff appears to assert the following causes of action under FCRA:

- Claim against Dworetsky under 15 U.S.C. §§ 1681a(o)(5)(i), (iii) for allegedly forwarding his Ameritas insurance application to Ameritas without receiving the proper authorization from Plaintiff. *See* 2d Am. Compl. at 11; 3d. Am. Compl. ¶¶ 81, 103–04.

- Claim against Ameritas and Pennington pursuant to § 1681s-2(a)(8) for their alleged failure to acknowledge his notice disputing the spelling of Plaintiff's name. *See* 2d Am. Compl. at 10.

- Claim against Ameritas and Pennington pursuant to § 1681s-2(b) for allegedly failing to provide Plaintiff an investigative report into the misspelling of his name. 2d Am. Compl. at 10; 3d Am. Compl at ¶¶ 79, 84, 98.

---

[2] The Third Amended Complaint contains nine sections: (1) a recitation of jurisdiction and venue; (2) a section titled "clarifications," which points the Court towards allegations in his Second Amended Complaint; (3) a section titled "Cause of Action," which clarifies the basis for Plaintiff's causes of action; (4) a section titled "Negligence," which repeats the alleged wrongdoing by Defendants; (5) a section titled "Factual Allegations involving Ameritas," which recounts allegations against Ameritas; (6) a section titled "Factual Allegations involving Dworetsky," which recounts allegations against Dworetsky; (7) a section titled "Cause for Relief," describing the injuries suffered; and (8) a "Conclusion," which reiterates his allegations.

- Claim against Ameritas under § 1681m, presumably for not issuing Plaintiff an insurance policy. *See* 3d. Am. Compl. ¶ 82.

- Claim against all Defendants, likely under § 1681c-1(1)(A), for allegedly failing to issue Plaintiff a "fraud alert." 2d Am. Compl. ¶¶ 3–4, 56, 58; 3d Am. Compl. ¶¶ 3, 110.

On November 21, 2018, Defendants moved to dismiss the Third Amended Complaint. ECF Nos. 70, 71. Plaintiff opposed the motions to dismiss on December 14, 2018 (ECF No. 72),[3] and Defendants replied on December 24, 2018 and January 2, 2019 (ECF Nos. 77, 79).

## II. DISCUSSION

Defendants argue that the Third Amended Complaint should be dismissed because: (a) Plaintiff lacks standing; and (b) Plaintiff fails to state a claim pursuant to Rule 12(b)(6). ECF No. 70 at 4–16; ECF No. 71 at 2, 12. The Court finds, as explained below, that Plaintiff has established standing, but still fails to state a claim upon which relief may be granted.[4]

### A. Standing

#### a. Legal Standard

The jurisdiction of federal courts is limited to "Cases" and "Controversies." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). An essential part of the case-or-controversy requirement is standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must show (1) an injury in fact, (2) causation, and (3) redressability. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "The party invoking federal jurisdiction bears the burden of establishing [standing]." *Lujan*, 504 U.S. at 561. On a motion to dismiss, a plaintiff must make

---

[3] Plaintiff filed an opposition to Dworetsky's motion to dismiss. ECF No. 72. Ameritas received an opposition to their motion from Plaintiff by mail. ECF No. 79, at 1 n.1. This latter opposition was not filed with the Court, but Ameritas attached it to their reply. Id.

[4] The Court notes that pro se complaints are liberally construed and held to less stringent standards than pleadings drafted by lawyers. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (2013) ("[P]ro se litigants still must allege sufficient facts.").

a plausible claim of standing, supporting each element "in the same way as any other matter on which [he] bears the burden of proof." *Id.*

The first element asks whether the plaintiff suffered harm. *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 138, 142 (3d Cir. 2009). A plaintiff must show that he "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (citation omitted).[5] The second element focuses on who inflicted the plaintiff's injury. *Toll Bros.*, 555 F.3d at 142. A plaintiff must allege "a causal connection between [his] injury and the conduct complained of." *Lujan*, 504 U.S. at 560–61 (requiring injury to be "fairly traceable" to the defendant's challenged conduct). The third element requires a plaintiff to show that it is "likely, as opposed to merely speculative, that [the plaintiff's] injury will be redressed by a favorable decision." *Pitt News v. Fisher*, 215 F.3d 354, 361 (3d Cir. 2000) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 181 (2000)).

    a. *Analysis*

The Court dismissed Plaintiff's prior pleadings for, among other things, lack of subject matter jurisdiction (ECF No. 25), failure to state a claim (ECF No. 47), and a lack of standing because Plaintiff failed to allege the first element: injury-in-fact (id. at 6–9). Since the dismissal of his Second Amended Complaint, Plaintiff has alleged an injury of the "theft of [his] Chase Credit Cards" and the need to replace those cards at Plaintiff's own expense. 3d Am. Compl. ¶¶

---

[5] An injury is "concrete" if it actually exists, and "particularized" if it affects the plaintiff personally and individually. *Id.*; *Lujan*, 504 U.S. at 560 n.1. Future injury must be imminent, i.e., "certainly impending," not a mere possibility. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).

108–09.[6] Although the Court accepts this assertion, it acknowledges that Plaintiff's current allegations of theft have certain weaknesses. For example, the Court notes that Plaintiff's prior pleadings failed to indicate any theft of his credit cards (despite attaching the same fraud alerts that he now asserts are evidence of theft, *see* ECF No. 48-2 at 27–28). Additionally, Dworetsky argues that the fraud alerts Plaintiff points to as support for his assertion "show only that there was potential unauthorized activity on his Chase account, and that any alleged fraud was *prevented* by Chase Bank." ECF No. 71-1 at 16. However, notwithstanding these assertions and the challenges Plaintiff has faced to effectively plead, the Court will consider Plaintiff's alleged injury. "For the purpose of determining standing, we must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Contrary to Dworetsky's assertions, the fraud alerts do not state that the suspected fraud was prevented, or otherwise contradict Plaintiff's alleged theft. While the fraud alerts merely indicate that Plaintiff *may* have been the victim of theft, the Court will accept Plaintiff's allegations of theft as true on this motion to dismiss. Thus, Plaintiff has satisfied the first element of standing, by alleging a concrete and particularized injury. *See Spokeo*, 136 S. Ct. at 1548.

Although Plaintiff does not explicitly state that the theft was resultant from Defendants' actions, it is listed in a section titled "Cause for Relief" and his allegations directly follow a paragraph that lists other injuries and expenses that Plaintiff incurred "[a]s a result of Defendants[']  conduct . . . ," which allows the Court to infer a causal connection between the challenged conduct

---

[6] Ameritas asserts that Plaintiff "makes no plausible factual assertions and offers no specifics as to any injury that Crisafulli might have suffered as a result of the Pennington Letter . . . Crisafulli is unable to make any allegations regarding any identity theft or improper disclosure of his personal information." ECF No. 70-1 at 14. Ameritas' position fails to grapple with Plaintiff's new allegations regarding his credit cards.

7

and alleged injury. 3d Am. Compl. ¶ 107. Furthermore, Plaintiff's allegation that his Social Security number was visible through the glassine of an envelope can support a finding that the alleged theft is "fairly traceable" to the challenged conduct. *See Lujan*, 504 U.S. at 560–61. The Court recognizes that a number of intervening events must have transpired between the challenged conduct and subsequent injury. Nevertheless, the Third Circuit Court of Appeals has held that the "traceability requirement [is] met even where the conduct in question might not have been a proximate cause of the harm, due to intervening events." *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 418 (3d Cir. 2013) (citing *The Pitt News v. Fisher,* 215 F.3d 354, 360 (3d Cir. 2000)). Thus, considering the liberal pleading standard for *pro se* plaintiffs, the second element is met here. *See id.*; *Mala*, 704 F.3d at 244–45 (describing the liberal pleading standard for pro se plaintiffs).

Lastly, the third element of standing is satisfied because there exists an "appropriate remedy that we can grant" to redress Plaintiff's identity theft and the cost of obtaining new cards: monetary damages. *See AT&T Commc'ns of New Jersey, Inc. v. Verizon New Jersey, Inc.*, 270 F.3d 162, 171 (3d Cir. 2001).

Accordingly, the Court, granting all inferences in favor of Plaintiff, finds that his allegations of theft and the cost of replacing his credit cards suffice to establish standing. *See Cottrell v. Alcon Labs.*, 874 F.3d 154, 163 (3d Cir. 2017) (where a plaintiff alleges financial harm, "standing 'is often assumed without discussion'") (quoting *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005)).

**B.     Failure to State a Claim**

As explained below, Plaintiff's claims brought pursuant to 15 U.S.C. §§ 1681a and 1681s-2(a) are dismissed because those FCRA provisions do not provide for a private cause of action.

Furthermore, Plaintiff's claim under § 1681s-2(b), which imposes a duty to investigate on entities that furnish inaccurate information to a CRA, fails because Plaintiff has not alleged that Ameritas or Pennington furnished inaccurate information (*i.e.*, the misspelling of Plaintiff's name) to a CRA, nor has he alleged that Ameritas or Pennington's duty to investigate was triggered. Lastly, to the extent Plaintiff asserts a claim under §§ 1681c or 1681m, those claims are dismissed as those provisions are patently inapplicable under the circumstances present here.

### 1. Legal Standard: 12(b)(6)

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that contains "a formulaic recitation of the elements of a cause of action" supported by mere conclusory statements or offers "'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Id.* (citation omitted). In evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008). On a motion to dismiss, the court separates the factual and legal elements of the claim and then decides whether the facts alleged "show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citation omitted).

### 2. Background: Fair Credit Reporting Act

FCRA was enacted to ensure fair credit reporting and to protect consumers and their privacy. *Harris*, 696 F. App'x at 90. FCRA imposes duties on two types of entities, "consumer reporting agencies" (CRAs) and "furnishers of information." *Burrell v. DFS Servs., LLC,* 753 F.

Supp. 2d 438, 446 (D.N.J. 2010); *Cosmas v. Am. Exp. Centurion Bank*, No. 07-6099, 2010 WL 2516468, at *7 (D.N.J. June 14, 2010) ("While primarily aimed at credit reporting agencies, FCRA also places obligations on creditors that furnish credit information to those agencies."). FCRA defines a CRA as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). FCRA defines a "furnisher" as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 16 C.F.R. § 660.2(c). In general, courts regard "furnishers of information" as furnishers of credit information, i.e., entities that report information relevant to consumer credit ratings, like particular debts owed by particular consumers. *Burrell*, 753 F. Supp. 2d at 446; *Cosmas*, 2010 WL 2516468, at *7.

### 3. Analysis of § 1681a Claim Against Dworetsky

Plaintiff brings a claim against Dworetsky, an insurance broker, under 15 U.S.C. §§ 1681a(o)(5)(i), (iii) for sending Plaintiff's Ameritas application to Ameritas "without a separate form which must be signed in order to give authority to Ameritas." 2d Am. Compl. ¶ 39. As advised in a prior decision by this Court, § 1681a does not provide an avenue for relief, rather it defines a number of terms and specifies rules of construction for terms referenced in FCRA. ECF No. 47 at 11. Moreover, Dworetsky is not subject to liability under FCRA because Plaintiff has

10

not alleged nor adduced facts that suggest Dworetsky is a CRA or a furnisher of information to CRAs. Thus, the § 1681a claim against Dworetsky is dismissed.[7]

### 4. Analysis of § 1681s-2(a) Claim against Ameritas and Pennington

Next, Plaintiff asserts a claim against Ameritas, a life insurance company, and its employee Pennington, pursuant to 15 U.S.C. §§ 1681s-2(a)(8), for ignoring Plaintiff's alleged "direct notice of the disputed information [on his] Trans Union credit report." 2d Am. Compl. ¶ 33. Subsection (a) of § 1681s–2 imposes certain duties on furnishers of information to ensure the accuracy of information in consumer reports. *Burrell*, 753 F. Supp. 2d at 446. Section 1681s-2(a)(8) specifically requires several federal entities to promulgate regulations governing when and how a consumer may submit a dispute concerning inaccurate or incomplete information furnished to a CRA, directly to a furnisher of information. *Id.* at 445. The Court has previously dismissed Plaintiff's § 1681s-2(a) claims because § 1681s-2(a) does not offer a private right of action. ECF No. 47 at 9–10. The law has not changed on this issue. *See Tauro v. Capital One Fin. Corp.*, 684 F. App'x 240, 242 (3d Cir. 2017) ("consumers may not enforce the requirements of § 1681s-2(a)"); *Harris*, 696 F. App'x at 90 n.2 ("[T]here is no private right of action against a furnisher of information under § 1681s-2(a); only federal or state authorities may enforce this subsection."); *Paredes v. Sallie Mae*, No. 11-2470, 2011 WL 5599605, at *4 (D.N.J. Nov. 16, 2011). Thus, the § 1681s-2(a) claim against Ameritas and Pennington is dismissed.

### 5. Analysis of § 1681s-2(b) Claim against Ameritas and Pennington

Plaintiff also asserts that he is entitled to an "investigative report" pursuant to § 1681s-2(b), alleging that his "notice [of disputed information] failed to trigger [Ameritas] to produce the proof

---

[7] The Court makes no findings regarding Dworetsky's argument that he was improperly served with process as there are independent grounds on which to dismiss the claims against him. ECF No. 71-1 at 18–20.

of any such investigation required by FCRA." 2d Am. Compl. ¶ 34.  Subsection (b) of § 1681s-2, which is titled "Duties of furnishers of information upon notice of dispute," governs a furnisher's duty to investigate alleged inaccuracies furnished to a CRA.  Unlike subsection (a), subsection (b) provides consumers with a private cause of action. *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011).  Nevertheless, Plaintiff's claim is dismissed because:  (1) he failed to plead that Ameritas or Pennington furnished inaccurate information to a CRA; and (2) he has not sufficiently alleged that Ameritas' duty to investigate was triggered.

First, in order to state a claim under section 1681s-2(b), the plaintiff must allege that the defendant furnished incomplete or inaccurate information concerning the plaintiff to a CRA. *Obarski v. Associated Recovery Sys.*, No. 13-6041, 2014 WL 2119739, at *4 (D.N.J. May 20, 2014).  For example, in *Obarski*, the Court dismissed the plaintiff's claim because his complaint did "not allege that [the d]efendant furnished any information to a credit-reporting agency . . . Thus, [the p]laintiff [] failed to plead that Defendant reported inaccurate or incomplete information to a credit reporting agency." *Id.*  Similarly here, Plaintiff does not allege that Ameritas or Pennington furnished *any* of his information, let alone the disputed "L" on his credit report, to a CRA.  At best, Plaintiff alleges that the same erroneous middle initial that appeared in the Pennington Letter also appeared in a credit report dated November 2, 2011 that he received from Trans Union; but the court cannot infer that Ameritas or Pennington furnished the disputed information from this fact alone.  Furthermore, the disputed information here—a misspelling of Plaintiff's name that he attributes to the spelling of his wife's name—is a mistake that could have been furnished to TransUnion by any company with Plaintiff's information.  These facts make this matter unlike cases where courts have assumed that the defendant furnished the disputed information (usually an unpaid debt) because it clearly involved the defendant's services. *See, e.g.*,

*Martinez v. Granite State Mgmt. & Res.*, No. 08-2769, 2008 WL 5046792, at *1–3 (D.N.J. Nov. 20, 2008) (court assumed that defendant loan servicer furnished disputed information regarding plaintiff's account with defendant); *Beisel v. ABN Ambro Mortg., Inc.*, No. 07-2219, 2007 WL 2332494, at *1–2 (E.D. Pa. Aug. 10, 2007) (court assumed that defendant mortgagee furnished disputed information concerning mortgage payment balance). Thus, Plaintiff cannot state a claim against Ameritas under § 1681s-2(b) because he neither alleged nor adduced facts to support an inference that Ameritas reported the inaccurate spelling of his name to a CRA.[8] *See Obarski*, 2014 WL 2119739, at *4.

Even if the Court assumes that Pennington and/or Ameritas furnished the disputed information, Plaintiff has nevertheless failed to allege that their duty to investigate was triggered. In order to trigger a furnisher's duty to investigate, the consumer must first dispute the incorrect information with the CRA. *Burrell*, 753 F. Supp. 2d at 445. Next, that agency must send notice of the dispute to the furnisher of that information. *Edwards v. Equable Ascent, FNCL, LLC*, No. 11-2638, 2012 WL 1340123, at *5 (D.N.J. Apr. 16, 2012). Only direct notice from an agency triggers a furnisher's duty to investigate. *Stefanowicz v. SunTrust Mortg.*, 765 F. App'x 766, 772–73 (3d Cir. 2019); *SimmsParris*, 652 F.3d at 358. Thus, to state a claim under § 1681s–2(b) a plaintiff must plead that he: (1) "sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the

---

[8] Plaintiff attaches to his Third Amended Complaint a letter dated July 11, 2012, which was addressed to John Kirtley, Esq. (presumably a representative of Ameritas) and drafted by William D. Feingold, Esq. on behalf of Plaintiff. 3d Am. Compl. at 22. The letter to Kirtley states that Feingold is in possession of the Pennington Letter, which "has caused my client [Plaintiff] to have an erroneous identity in his credit report with Trans Union that being Gregory L. Crisafulli as opposed to his actual name of Gregory Crisafulli." Id. The Court cannot infer that Ameritas furnished the misspelling of Plaintiff's name based on Feingold's assertion regarding the Pennington Letter because there is no indication that the Pennington Letter was sent to anyone but Plaintiff and Primerica.

13

furnisher failed to investigate and modify the inaccurate information." *Obarski*, 2014 WL 2119739, at *3 (quoting *Martinez*, 2008 WL 5046792, at *3); *Edwards*, 2012 WL 1340123, at *5 (citation omitted).

Here, Plaintiff has adequately alleged the first element. *See* 3d Am. Compl. ¶ 84 ("I disputed the Trans Union credit report citing the exact name that was altered on the October 13, 2011 above mentioned letter with Trans Union and received conf[i]rmation from Trans Union Credit Reporting Agency the negative spelling of my name has been removed."). Plaintiff has also attached a November 20, 2011 letter from TransUnion that states their "investigation of the dispute [Plaintiff] recently submitted is now complete," which supports Plaintiff's allegation. 3d Am. Compl. at 16, 27–28.

However, Plaintiff has not pled the second element of a § 1681s–2(b) claim, which requires Plaintiff to allege that the CRA notified the defendant furnisher of the dispute. *See Edwards*, 2012 WL 1340123, at *5. Plaintiff has not alleged that TransUnion (or any other CRA) contacted Ameritas or Pennington about *any* dispute. Instead, Plaintiff alleges that he "received conf[i]rmation from Trans Union Credit Reporting Agency [that] the negative spelling of my name has been removed" and attaches a November 20 correspondence from TransUnion, which suggests that TransUnion investigated and resolved the issue without needing to contact the furnisher. 3d Am. Compl. ¶ 84; id. at 28. Plaintiff's contention that he notified Ameritas directly is unavailing because a furnisher must receive notice of a dispute from a CRA, not the consumer. *See Stefanowicz*, 765 F. App'x at 772–73 ("A consumer may certainly notify a furnisher/creditor directly about h[is] dispute . . . but there is no private cause of action under § 1681s-2(b) for a furnisher's failure to properly investigate such a dispute."); *Lorenzo v. Palisades Collection, LLC*, No. 05-886, 2006 WL 891170, at *2 (D.N.J. Apr. 5, 2006) (permitting claim "only where the

14

[furnisher] receives notice of a dispute directly from a consumer reporting agency, as opposed to from the consumer").

Thus, the § 1681s-2(b) claim against Ameritas and Pennington must additionally be dismissed for failure to plead that any CRA contacted the furnisher about the misspelling of Plaintiff's name. *See Alves v. Verizon*, No. 08-3196, 2010 WL 2989988, at *9 (D.N.J. July 27, 2010) ("Plaintiff has not alleged that a consumer reporting agency gave notice to defendants that she was disputing her alleged debt. Plaintiff's Third Claim is dismissed with prejudice.").[9]

### 6. *Analysis of § 1681m Claim against Ameritas*

In his Third Amended Complaint, Plaintiff claims that under FCRA, "[a]nyone who uses information from a CRA to deny your application for credit, insurance or employment or take another adverse action against you – must tell you and give you the name, address and phone number of the agency that provided the information." 3d Am. Compl. ¶ 82. Plaintiff does not cite to any specific section, but seems to be referencing § 1681m, which requires any person that takes "any adverse action with respect to any consumer *that is based in whole or in part on any information contained in a consumer report*," to provide notice of the adverse action to the consumer and provide the contact information of the individual that furnished the consumer report.

---

[9] The Court recognizes that there is case law stating that, if a claim meets the first element of agency notice, the court can infer that the CRA contacted the furnisher and that the second element has also been met. *See Edwards*, 2012 WL 1340123, at *6. However, this inference applies when it is clear that the defendant furnished the disputed information, and thus obvious that the agency would have contacted that defendant-furnisher. *See, e.g.*, *Martinez*, 2008 WL 5046792, at *1 (allowing for inference where plaintiff sued defendant Granite State Management for "negative information about an account with Granite State [that] appeared on her credit report"); *Beisel*, 2007 WL 2332494, at *1 (inference found where it was clear defendant mortgagee was responsible for furnishing information about unpaid balance on mortgage). Because it is unclear whether Defendant furnished the information in dispute, the Court cannot infer that the second element has been met.

15

§ 1681m(a) (emphasis added).[10] Plaintiff does not explain what action taken by Ameritas constitutes an "adverse action." However, to the extent Plaintiff claims that failing to issue him a life insurance policy was an adverse action, this claim fails because Plaintiff does not allege that Ameritas' decision was based on information contained in a consumer report. In fact, Plaintiff himself provides documents that indicate Ameritas closed his application because he refused to assist with the underwriting process, not because of any information contained in a consumer report. 3d Am. Compl. at 21. Accordingly, any claim under § 1681m is dismissed.

### 7. *Analysis of § 1681c Claim against all Defendants*

Lastly, Plaintiff appears to allege that all Defendants failed to issue Plaintiff a "fraud alert." 2d Am. Compl. ¶¶ 3–4, 56, 58; 3d Am. Compl. ¶¶ 3, 110. Under § 1681c-1(1)(A), if a consumer informs a CRA that they have been or are about to become a victim of identity fraud, the agency must include a "fraud alert" in the consumer's file. *Burrell*, 753 F. Supp. 2d at 449 n.6 (D.N.J. 2010). To the extent that Plaintiff asserts a claim pursuant to § 1681c-1(1)(A), that claim must be dismissed because there are no factual allegations that suggest any of the Defendants are CRAs.[11]

---

[10] The Court has identified three other FCRA provisions that concern "adverse actions," but are either inapplicable here or do not provide a cause of action. *See* §§ 1681a(k) (defining an "adverse action" for the purposes of a FCRA claim; does not provide a cause of action), 1681a(y)(2) (explaining which adverse actions are excluded from consideration in employment context; inapplicable here), 1681b(b)(3) (providing conditions on the use of consumer reports in employment context; inapplicable here).

[11] The Court also notes that, in his opposition, Plaintiff cites the "Social Security Fraud Prevention Act of 2017." ECF No. 72, ¶ 116 & Exhibit 53 (annotated excerpt of the Social Security Number Fraud Prevention Act of 2017, Pub. L. No. 115-59, §§ 1–2, 131 Stat. 1152 ("SSNFPA" or "Act"), underlined §§ 2(b)(1) and (2)). Insofar as Plaintiff seeks to raise new claims in his briefing under the SSNFPA, they are dismissed. First, a plaintiff may not amend or supplement his complaint via his opposition papers. *Swift v. Pandey*, No. 13-649, 2013 WL 6022093, at *2 (D.N.J. Nov. 13, 2013). Second, any purported claim under the SSNFPA fails as a matter of law as the SSNFPA was enacted to prevent federal agencies from unnecessarily including social security numbers in mailed documents and thus applies only to federal documents sent by mail. *See generally* SSNFPA. The portion underlined by Plaintiff—"Restriction of Social Security Numbers on Documents Sent by Mail,"—merely directs federal agencies to issue regulations that include

### C. Futility of Amendment

After dismissal, amendment is granted unless there is "bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1196–97 (3d Cir. 1994) (citation omitted). Dismissal with prejudice is "appropriate if amendment would be inequitable or futile." *Hilton v. Whitman*, No. 04-6420, 2006 WL 1307900, at *2 (D.N.J. May 10, 2006).

Plaintiff has repeatedly failed to state a claim despite being given multiple opportunities to cure the deficiencies in his pleadings, and despite being cautioned that certain statutes cited do not permit a private cause of action. Moreover, as explained above, permitting a fourth amendment would be futile because Plaintiff has not set forth any plausible basis for relief. Therefore, the dismissal is *with prejudice*. *See Lundy*, 34 F.3d at 1196–97.

### III. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (ECF Nos. 70, 71) are granted and Plaintiff's Third Amended Complaint (ECF No. 66) is dismissed with prejudice. An appropriate Order accompanies this Opinion.

DATED: February 25, 2021

_____
**CLAIRE C. CECCHI, U.S.D.J.**

---

instructions for redacting social security numbers and requiring that social security numbers are not visible on envelopes. *See* ECF No. 72 at 27 (excerpting SSNFPA §§ 2(b)(1), (2)). These provisions apply only to federal agencies when they send mail that includes social security numbers. *See* SSNFPA § 2(d)(1). The Act does not apply to private actors and Plaintiff does not claim that either Defendant is a government agency. Thus, Plaintiff cannot bring a claim under the SSNFPA against Defendants.